

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DANIEL H. MORRIS | * |
| Plaintiff, | * |
| v. | * Civ. No.: PJM 06-2490 |
| ANTONIO REDD | * |
| Defendant. | * |

## MEMORANDUM OPINION

Daniel H. Morris sued Antonio Redd and others for damages arising out of a mortgage transaction that Redd, an employee of Wells Fargo Home Mortgage, induced Morris to enter into. Redd failed to answer or otherwise respond to the Complaint. The Clerk of the Court has entered a Default in favor of Morris. Morris has filed a Renewed Motion for Default Judgment against Redd, seeking $32,416.[1] For the following reasons, Morris's motion will be **GRANTED IN PART** and **DENIED IN PART**, and Final Judgment will be entered in favor of Morris and against Redd in the amount of $12,416.

I.

In August 2005, Morris contacted Redd to inquire about possible mortgage options that Wells Fargo Home Mortgage might provide in connection with Redd's proposed purchase of a property in Upper Marlboro, Maryland. Based on Redd's representations, Morris took out a first trust mortgage and a second trust mortgage with Wells Fargo. Redd represented that the second trust mortgage would have a variable interest rate beginning at approximately

---

[1] In the text of his Motion, Morris seeks "an amount not less than $32,500," and in his affidavit he seeks "damages in the amount of $32,425." However, the calculations in Morris's affidavit reflect damages in the amount of $32,416. Accordingly, the Court will treat Morris's Renewed Motion for Default Judgment as seeking $32,416.

4.22% and that the rate that would not increase by more than 1% annually. At the property closing in September, 2005, Redd gave Morris written disclosures for the second trust mortgage that were inconsistent with his prior representations and which reflected a starting interest rate of 7.625% instead of 4.22%. Redd told Morris that these were "general" disclosures and orally confirmed that, in fact, the second trust mortgage rate would operate as he had previously described. At Morris's request, Redd drafted a side letter disclosing terms consistent with his earlier representations. Relying on Redd's oral and written representations, Morris signed the "general" loan disclosures with the understanding that the side letter would govern the loan. However, as it turned out, contrary to Redd's assurances, the loan terms were in fact those reflected in the "general" disclosures, not the side letter. Morris's initial interest rate was 7.625%, and the rate increased by more than 1% over the ensuing months.

Morris eventually sued Redd and various other Wells Fargo corporate and employee Defendants. He served Redd with the Complaint on January 21, 2007 and with an Amended Complaint on February 5, 2007. When Redd failed to answer or otherwise respond to the Complaints, Morris moved for an entry of default judgment against him. The Clerk of the Court entered a Default as to Redd on July 20, 2007, at which point the Court indicated that it would consider a motion for default judgment following trial or after final disposition of the case.

In time, all Defendants other than Redd settled Morris's claims against them for the sum of $20,000.

On June 27, 2011, after that settlement was executed, the Court closed the case. On July 27, 2011, however, Morris filed a Renewed Motion for Default Judgment, supplemented by an affidavit filed on September 29, 2011, in which he requests the difference between the

mortgage payments Redd represented Morris would have to pay and the mortgage payments he must actually make, for a total of $32,416. In response to correspondence from the Court, Morris submitted a letter, which the Court treats as a Motion to Reopen the Case. The Court now reopens the case and considers Morris's Renewed Motion for Default Judgment.

## II.

Where a default has been previously entered and the complaint does not specify the amount of damages, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Fed. R. Civ. P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011). The Fourth Circuit has a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Nevertheless, default judgment may be appropriate where the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

The court takes as true the well-pleaded factual allegations in the Complaint as to liability, but not as to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Here, Morris asserts tort and contract claims against Redd, for which the Court finds Redd liable to Morris in damages.[2]

---

[2] Certain of the enumerated claims in the Complaint cannot lie against Redd, even taking the factual allegations in the Complaint as true. *See Baltimore Line Handling, Co.*, 771 F. Supp. 2d at 540 ("[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action.") (quoting 10A Wright, Miller & Kane, Federal Practice & Procedure, § 2688, at 60–61 (3d ed. 1998)). For example, Morris has pled no facts to support a finding of discrimination under the Civil Rights Act or Fair Housing Act.

The Court, then, turns to the appropriate measure of damages and considers "affidavit and other documentary evidence" in order to determine the precise amount of damages to be awarded. *Maloney v. Disciples Ltd.*, LLC, No. 1:06CV00124, 2007 WL 1362393, at *2 (M.D.N.C. May 8, 2007); *see also DirecTV Inc. v. Yancey*, No. Civ.A. 404CV00011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that Plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits").

According to his affidavit, Morris will pay a total of $145,632 over the life of the second trust mortgage, whereas he would have paid a total of $113,207 had Redd honored his oral and side letter representations. The difference between these two amounts is $32,416. Although Morris's calculations appear sound, the Court finds that his claims against Redd arise out of the same transaction that formed the basis for his claims against the other Defendants, with whom he has already settled. Allowing Morris to recover the amount of the settlement in a judgment against Redd would amount to double recovery and an unwarranted windfall, under either a tort *or* a contract theory of liability. *See Owens-Illinois, Inc. v. Armstrong*, 326 Md. 107, 604 A.2d 47 (1992) ("The amount recoverable from the non-settling defendant when added to the amount recoverable from the settling defendant cannot exceed the plaintiff's verdict."); Restatement 2d Contracts § 294 ("Any consideration received by the oblige for discharge of one promisor discharges the duty of each other promisor of the same performance to the extent of the amount or value received."). Accordingly, the Court reduces Morris's calculated damages by the settlement amount and awards him default judgment against Redd in the amount of $12,416.

### III.

For the foregoing reasons, default judgment is **GRANTED** in the amount of $12,416. A separate Order and Final Order of Judgment will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

December 13, 2011